143                    Village of Groveport v. Bradfield.

---

145          PLEADING—MUNICIPAL CORPORATIONS—NEGLIGENCE.

[Franklin Circuit Court, January Term, 1887.]

Stewart, Shauck, and Shearer JJ.

*VILLAGE OF GROVEPORT V. JULIA BRADFIELD.

1. PETITION IN AN ACTION AGAINST A MUNICIPAL CORPORATION FOR INJURIES CAUSED BY THE OBSTRUCTION OF A STREET.

A petition in an action against a municipal corporation for the recovery of damages, for personal injuries caused by the obstruction of a street, is *bad on demurrer* where it fails to aver that the corporation negligently caused such obstruction; or that, not having caused the same, it had actual notice of its existence, and failed to remove it within a reasonable time; or that, in the absence of actual notice, such obstruction continued for such length of time prior to the injury that notice was fairly to be inferred.

2. CITY NOT LIABLE WHERE IT APPEARS THAT IT HAD NO NOTICE OF THE OBSTRUCTION.

In such an action, where it appears that the city or village had no notice, express or implied, of such obstruction or defect, or did not cause the same, it is not liable in damages to the party injured, although the latter may not by his own fault have contributed to the injury.

3. FAILURE OF A PEDESTRIAN TO USE THE SIDEWALK, EFFECT.

Where a pedestrian, without necessity, or for his own pleasure or convenience, leave the sidewalk, it being in good condition, and resorts to the street, and in doing so meets with an accident, outside the sidewalk, he is guilty of such contributory negligence as will bar his right to recover for the injury against the corporation.

ERROR to the Court of Common Pleas of Franklin county.

SHEARER, J.

Julia Bradfield sued the incorporated village of Groveport, alleging in her petition that on the 23d day of December, 1884, a certain street of said village, traveled and used by the citizens thereof and the public generally, was allowed to become partially obstructed and dangerous to travel, by reason of the accumulation thereon of diversed piles of brick and rubbish, of which the defendant had due notice; that on that day and the night following, said brick and rubbish were allowed to remain exposed without lights or guards; that plaintiff on said night was lawfully traveling on said street, when she accidentally and without fault on

---

*This decision was affirmed by the Supreme Court without report, November 21, 1893.

her part, stepped upon one of said piles of brick, and was precipitated thereon, whereby she was bruised and injured, her arm broken and its use permanently impaired, etc., to her damage $5,000, for which she prays judgment.

Defendant filed a motion to require the plaintiff to make said petition more definite and certain, which was overruled. Thereupon the village interposed a general demurrer to said petition, which was likewise overruled and an exception taken.

Defendant then answered admitting its corporate character, but ·denying all the other allegations of the petition, and averring that the injuries complained of, if any, were caused by the fault and negligence of the plaintiff. To this pleading a reply was filed denying the allegations of contributory negligence.

Upon the issue thus joined a trial was had, resulting in a verdict for the plaintiff in the sum of $1,000.

A motion for a new trial was filed, on the grounds: that the court erred in overruling said demurrer; that the verdict was not sustained by sufficient evidence and was contrary to law; that the damages were excessive, etc., which motion the court overruled, and entered judgment on the verdict; whereupon a bill of exceptions, embodying all the evidence, was taken and made part of the record in the cause.

To reverse said judgment said village prosecutes this proceeding, assigning as error.

1. The overruling of said demurrer;
2. The overruling of the motion to reform said petition ;
3. The overruling of said motion for a new trial.

The error principally relied on are the overruling of said demurrer, and the refusal to grant a new trial on the grounds stated in the motion.

Of these in their order:

(1.)  Did the court blow err in overruling said demurrer? Or, in other words, did the petition state legal cause of action.

It is not alleged that the village created or caused the obstruction complained of, but only that it allowed the street to become partially obstructed; nor is it charged that the obstruction existed prior to the 23rd. of December, 1884, the day the accident occurred; nor that the corporation had notice of the existence of the alleged obstruction a sufficient length of time before the injury of the defendant in error to have removed it in the exercise of ordinary care; nor does the petition contain any allegations of negligence on the part of the village.

The basis of the action is negligence; and in order to constitute a legal cause of action, it should appear in the petition that the village either caused the obstruction, or had notice of the defect which caused the injury, a sufficient length of time before it happened to have enabled it, in the exercise of ordinary care and diligence, to remove it. Municipal corporations are only bound to exercise reasonable diligence to repair defects, or prevent accidents, after the unsafe condition of streets and highways is known.

Thompson, in his work on Negligence (p. 762, vol. 2), says that "unless the obstruction or defect is created by the corporation itself, or some one in privity with it, the city will not be liable for damages produced by the defect, unless it had notice thereof, express or implied, a sufficient length of time before the happening of the accident, to have enabled it, by the exercise of reasonable diligence, to make the necessary repairs."

The supreme court of Indiana, in the case of Fort Wayne v. DeWit, 47 Ind., 391-5, which is very similar to this, say :

"A city is not liable for an injury to a person caused by falling into an excavation in a sidewalk, made by the owner of an adjoining lot—and not by the officers or agents of the city—left open, unguarded, without barriers or lights in the night time, when no notice of the condition of such excavation was had by the city, and no facts existed from which notice to the city, might be reasonably inferred."

Again, in the same case, it is said: "The ground of liability being negligence, it is necessary that the complaint should have alleged that appellant negligently suffered the excavation to remain open and the passage of the sidewalks to be obstructed and rendered dangerous to passengers. Where liability depends upon negligence, the existence of such negligence must be averred.

Without citing further authorities, we may say that we know of no rule which will dispense with the averment of negligence, where a recovery is sought on account of the default of a municipal corporation in the care of its streets whereby injury is sustained. Where there is no negligence there is no liability. It is the gist of the action, and a failure to charge it by express averment, or by language from which it can be fairly inferred, is fatal.

No charge of negligence on the part of the plaintiff in error, and no sufficient averment of notice, being set forth in the petition it follows that it is sufficient, and the demurrer thereto ought to have been sustained.

(2) Is the verdict against the weight of the evidence?

The evidence shows that the streets of the village were provided with sidewalks, but not with regularly established crossings from one side of the streets to the other; that for some years there has been a raised pathway across Main street, from the Methodist church to Lindler's grocery, kept in repair so far as it was kept, by the voluntary labor of the citizens, particularly by Lindler and the members of the church, and that it was used by the public generally as a means of crossing said street.

It further appears that the plaintiff resided about a mile from Groveport; was accustomed to visit the village frequently, and was well acquainted with the streets, sidewalks and crossings. That she knew that the church had recently constructed a new side walk in front of its property on said street, and that the same was then in good repair, and safe for travel; that said crossing was lighted by means of lamps placed in the windows of said grocery, and by a reflector lamp on the outside of the building, and that on this particular evening, there were lights in the vestibule of the church, opposite the grocery, and that by means of these lights the crossing was quite well illuminated—sufficient so to enable persons using it to see their way.

With full knowledge of these facts the plaintiff on this night, about the hour of seven o'clock, being on her way from the postoffice to Dr. Smith's or the Baptist church passed down the sidewalk, on the north side of Main street, until she reached the middle of the intersecting street, known as Church street, where she left the usual pathway, or sidewalk, and started in a direct line for Dr. Smith's, which would require her to traverse the street for an entire square in a diagonal, course from the north-east corner of Main and College streets to the south-west corner of Main and College streets. Near the corner first named was a quantity of brickbats—a couple of wheelbarrow loads—which had been thrown there by the bricklayers after laying the sidewalk in front of the church. She stepped upon one of them, which turned, causing her to fall upon the debris, whereby she suffered a fracture of the arm.

The testimony shows that the night was quite dark, with a violent snow storm prevailing—which would render it difficult to see if it were not very dark—especially to one who is near sighted, as plaintiff says she is. She left the usual route, she says, because she "does a good deal of walking," "most always likes to take the shortest (cut) across," and besides on that evening she "was in a hurry." She gives the additional reason that the light at the crossing would have blinded her so that she could not have seen the horses on the streets.

The evidence does not show, nor is it claimed, that these brickbats were placed upon the street by the village, or by its authority; nor does it appear that it had actual notice of their presence prior to the accident, although there is some evidence tending to show that a conversation was had between a trustee of the church and a member of the council of the village looking to the use of said brickbats in the construction of a gutter in front of the church.

Another fact established in the case is that the bricks for the sidewalk were hauled to the church about the 6th or 8th of December, and piled upon the street outside the sidewalk, and between that time and the occurrence of the injury complained of, the plaintiff, while traveling the street on this same route, fell upon them.

The foregoing is a brief outline of the leading facts as shown by the bill of exceptions. Do they establish the plaintiff's right to recover?

Although there is some conflict of authority upon the question, we are disposed to hold that, where streets are provided with sidewalks, pedestrians have no right, except for the purpose of crossing in the most direct route, where crossings are not provided, to leave the sidewalk and substitute the street as a footway. Sidewalks are for pedestrians; streets for teams and vehicles. And "where a person, without necessity, or for his own pleasure or convenience, deviates from the traveled track, it being in good condition, and in doing so meets with an accident, from some cause outside of said track, the municipality will not be liable for the result in damages. The corporation is not bound to make repairs out of the traveled path." Thompson on Negligence, 768, 769. The plaintiff, but a short time before this accident, met with a similar fall at or about the same place, but without serious results. She did not know on the occasion of her last fall whether the obstruction over which she first fell, had been removed or not. She did know that there was a safe level sidewalk along the street she was traveling, by which she might reach the church crossing and thence pass safely over to her destination. But being in a hurry, and partial to short cuts, she assumed the risk on a dark, stormy night—near-sighted though she was—of traveling safely for the distance of an entire square through the street. We think this was such want of ordinary care as amounted to contributory negligence.

But suppose this were not so. Does the evidence show such violation of duty on the part of the corporation as would render it liable in this case?

What is the duty of the municipal corporation in respect to its streets? To keep them open, in repair, and free from nuisance. What is necessary to be done in order to comply with this requirement? Must the corporation keep the streets in repair and free from obstruction over every part of it? Or does the requirement apply only to the traveled portion—to that part necessary and ordinarily used for public travel?

It has been said that "a town is not liable for the obstruction of portions of a highway, not part of the traveled path, and not so connected with it that they will affect the security or convenience for travel of those using the traveled path." 2 Dillon, 912, note.

"A municipal corporation is not an insurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause injury, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day." 2 Dillon, Municipal Corporations, 917.

Can it be said from the evidence that the street was not in a reasonably safe condition for travel in the ordinary modes? If it can, then every municipal corporation is bound at its peril to remove every loose substance or inequality of surface from its streets, without delay, so as to afford a smooth, level pathway for pedestrians who may prefer the street to the sidewalk as a route of travel. The mere statement of the proposition shows its absurdity.

Again, where an injury results from an obstruction in a street, the corporation is not liable unless:

First—It created the obstruction and therefore was guilty of misfeasance, or, 2d, It, not having created the nuisance, had notice thereof, express or implied, and failed to remove the same or repair the defect within a reasonable time.

It is not pretended that the village created the obstruction, and we need only consider the second proposition.

The only evidence disclosed by the record which tends to show notice to the corporation, is the statement of the witness Long, who being a member of the

village council, was asked by a trustee of the church whether the council would join the church authorities in the. construction of a gutter of the bats remaining after the completion of the pavement. The councilman said he did not know, but would call the attention of council to the matter, but forgot to do so. It cannot be seriously claimed that this casual conversation would bind the village, even if Long of his own motion and without authority had told the trustees to leave the bricks there, and they had done so in pursuance of such direction.

It has been held that knowledge acquired by a bank director when not engaged in the business of the bank, will not bind the bank, and we see no reason why the rule is not applicable in the case of a municipal corporation.

The evidence fails to show actual notice to the corporation of the existence of the alleged obstructions; or that such obstructions had existed for such a length of time before the accident that notice could be fairly inferred; and while we recognize in their full force the rules requiring the submission of the question to the jury, where there is very slight evidence of negligence; and that unless the verdict is clearly against the weight of the evidence it ought not to be disturbed, a majority of the court are of the opinion that the verdict in this case ought to have been set aside, for the reason that there is no evidence of negligence on the part of the corporation; and for the further reason that we think the plaintiff by her own carelessness and negligence contributed to the injury she sustained.

The court is unanimously of the opinion that the court below erred in overruling the demurrer to the petition; and a majority are of opinion that the motion for a new trial ought to have been sustained on the ground that the verdict is against the evidence.

The judgment of the court below will, therefore, be reversed at the costs of the plaintiff in error, and the cause remanded for a new trial.

---

152               BILL OF EXCEPTIONS—EXECUTOR—ACTIONS.